Jeffrey Toppe, Esquire (Cal. Bar. No. 329535)
The Toppe Firm, LLC
c/o 4503 N. Front Street
Harrisburg, PA 17110
800-706-2764 (phone)
717-525-9143 (fax)
jct@toppefirm.com

Ryan P. Dickinson, Esquire (*pro hac vice*)
Andreozzi + Foote
4503 N Front Street
Harrisburg, PA 17110
800-706-2764 (phone)
717-525-9143 (fax)
ryan@vca.law

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **C.U.,** | : CIVIL ACTION |
| *Plaintiff,* | : |
| v. | : No. 2:25-cv-01393-DJC-JDP |
| | : |
| | : **Violation of 18 U.S.C. § 1595;** |
| | : **Violation of Child Abuse Victims** |
| | : **Rights Act; 18 U.S.C. § 2255, Neg-** |
| | : **ligence, Gross Negligence, and** |
| | : **Recklessness; Claim for Childhood** |
| | : **Sexual Assault Pursuant to Cal.** |
| | : **Code of Civil Procedure § 340.1;** |
| | : **Intentional Infliction of Emotional** |
| | : **Distress** |
| | : |
| **3240 MATHER FIELD LLC and VIRPUR** | : |
| **INVESTMENTS, LLC** | : **JURY TRIAL DEMANDED** |
| *Defendants.* | : |

- 1 -
AMENDED COMPLAINT

# TABLE OF CONTENTS

**I.   INTRODUCTION** ...............................................................................................................2

**II.  PARTIES** ...........................................................................................................................2

**III. JURISDICTION & VENUE** ...................................................................................................3

**IV. FACTS** .............................................................................................................................3

**V.  CAUSES OF ACTIONS** ......................................................................................................11

    **A. COUNT I** ...................................................................................................................11
       *Violation of 18 U.S.C. § 1595 ("TVPRA")*

    **B. COUNT II** ..................................................................................................................16
       *Violation of Child Abuse Victims Rights Act, 18 U.S.C. § 2255 ("CAVRA")*

    **C. COUNT III** ................................................................................................................17
       *Negligence, Gross Negligence and Recklessness*

    **D. COUNT IV** .................................................................................................................18
       *Claim for Childhood Sexual Assault Pursuant to Cal. Code of Civil Procedure § 340.1*

    **E. COUNT V** ..................................................................................................................19
       *Intentional Infliction of Emotional Distress*

**VI. JURY TRIAL DEMANDED** ................................................................................................19

**VII. PRAYER FOR RELIEF** .....................................................................................................20

**AMENDED COMPLAINT**

AND NOW, comes the Plaintiff, C.U., by Jeffrey C. Toppe, The Toppe Firm, LLC, Ryan P. Dickinson, and Andreozzi + Foote, who files this Complaint against the Defendants , 3240 Mather Field, LLC ("Mather") and Virpur Investments, LLC ("Virpur") (collectively, "Defendants "), and in support thereof, states as follows:

**INTRODUCTION**

1.     This action for damages is brought by Plaintiff, a survivor of sex trafficking, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595.

2.     Sex trafficking is defined under 22 U.S.C. § 7102 (11) as "[t]he recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act, in which the commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such an act has not attained 18 years of age."

3.     Plaintiff meets the definition of a sex trafficking victim, induced by force, fraud, and coercion by traffickers to engage in commercial sex at the subject hotel, by being psychologically and physically prohibited from escape by traffickers, or alternatively, was a minor at the time of the trafficking.

4.     The TVPRA provides a civil remedy for victims of a violation of the act.

5.     Section 1595 of the TVPRA provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the trafficker (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees." 18 U.S.C. § 1595.

**PARTIES**

6.     Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff's name and address is not contained herein protect the safety, privacy and identity

of sex trafficked victim(s). Similarly situated plaintiffs from across the nation have proceeded by pseudonym or by their initials due to the foregoing.

7.    Plaintiff is currently a resident of Arizona.

8.    Plaintiff was born in 1998.

9.    At all times relevant and material, Defendants 3240 Mather Field, LLC had a principal place of business at 3240 Mather Field Rd, Rancho Cordova, CA 95670. Defendants  Mather was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the subject premises and subject hotel during the relevant period, and prior thereto, and as such responsible for the subject hotel during the time period Plaintiff was sex trafficked on said premises.

10.    At all times relevant and material, Defendants Virpur Investments, LLC had a principal place of business at 3240 Mather Field Rd, Rancho Cordova, CA 95670. Defendants  Virpur was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the subject premises and subject hotel during the relevant period, and prior thereto, and as such responsible for the subject hotel during the time period Plaintiff was sex trafficked on said premises.

11.    Upon information and belief, Defendants Virpur sold the subject property at 3240 Mather Field Rd, Rancho Cordova, CA 95670 to Defendants Mather some time in 2015.

**JURISDICTION AND VENUE**

12.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely 18 U.S.C. § 1595.

13.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Count asserted in this action occurred in the judicial district where this action was brought, and Defendants  conduct business within this District pursuant to 28 U.S.C. § 1391(b).

**FACTS**

14.    As it pertains to the subject Defendants, Plaintiff was sex trafficked at the aforesaid hotels, owned and operated by Defendants, by her trafficker in 2015.

AMENDED COMPLAINT

15.     Plaintiff was sex trafficked by Abdul Basier Hashimi (hereinafter "Trafficker" or "Hashimi").

16.     At the time that she was trafficked, Plaintiff was a minor.

17.     Plaintiff was kidnapped by Hashimi and forced to engage in sex work.

18.     Hashimi threatened to kill Plaintiff and plied her with drugs and alcohol to make her comply.

19.     Hashimi advertised Plaintiff for sex online on Backpage.

20.     Plaintiff was eventually rescued from the hotel by police.

21.     Hashimi would ultimately plead guilty to sex trafficking minors.

- 4 -
AMENDED COMPLAINT



SACRAMENTO (CBS13) – A man was sentenced to 12 years and seven months in prison for sex trafficking a child Friday, according to the Department of Justice.

Abdul Basier Hashimi, 26, of Elk Grove, was sentenced after he pleaded guilty to sex trafficking of a child on Aug. 31, 2018. According to court documents, Hashimi met the 13-year-old victim in August

22.      Sex trafficking occurred at the subject hotel prior to Plaintiff's trafficking and was known to Defendants.

AMENDED COMPLAINT

23.     At least as early as 2012, guests at the hotel would leave reviews complaining that prostitution was openly occurring on the premises.




CapeTownRunner
wrote a review
75 contributions

Date visited    **Dec 2012**
Trip type       **Solo**

**You get what you pay for**

First off, the price was $63, so you cant be too picky. The room was plenty big enough, the bed comfy, ice and soda available, free breakfast buffet (that i didnt use) and friendly staff. BUT, and its a huge BUT. None of that really matters, if you are there for one night, needing to sleep, and it appears there are **prostitutes** working out of the room next to you, or at the very least one helluva of a party! From 6pm until 3am, through the paper thin walls you could hear EVERYTHING that went on next door. The hotel wasnt busy so i have no idea why i couldnt have been given a room not next to another room where at least i might have got more than 2 hours sleep. Sorry to say i would recommend this hotel to anyone.

Review collected in partnership with this hotel ⓘ

| Value | | Rooms | | Location | |
|-------|---|-------|---|----------|---|
| ▬▬▬ | 3.0 | ▬▬ | 2.0 | ▬▬ | 2.0 |
| **Cleanliness** | | **Service** | | **Sleep Quality** | |
| ▬▬▬ | 3.0 | ▬▬▬ | 3.0 | ▬ | 1.0 |



This review is the subjective opinion of a Tripadvisor member and not of Tripadvisor LLC. Tripadvisor performs checks on reviews as part of our industry-leading trust & safety standards. Read our transparency report to learn more.

👍 0 helpful votes

24.     These reviews continued into 2015, when Plaintiff was trafficked at the hotel.

AMENDED COMPLAINT



**majorrogerh**
wrote a review
2 contributions

Date visited    **Feb 2015**
Trip type       **Business**

●○○○○                                    Feb 2015  •••

**Never Again**

1. 1st night. People in next room made enough noise to awaken me from a deep sleep at 2 AM. I called the desk to complain. They called the room (I could hear the phone ring through the walls) and let it ring two times. The noise continued. I called back and complained again. The front desk said that I must be mistaken, for no one was in that room. I said fine, if you can't handle the problem, I will call the police myself. The noise stopped within 1 minute.

2. Got moved to another room for the next two nights. I found that I had hot water in the shower, but none at the sink. I contacted the front desk in person to let them know and then went to work all day. Guess what; no hot water for my entire stay at the sink.

3. Watched a couple of drug buys going down in the inner court yard. The local police should have one of their own moonlighting at the front desk so that they could file check the people coming in for a room.

4. Oh yea; I forgot about the hookers getting rooms too. Would I ever come back to this place. Only if I had a paddy wagon and SWAT team to round up "all the usual suspects."

5. The only member of the entire staff at the hotel who had a clue was the gentleman running the front desk on the PM shift who voluntarily moved me to another room after my experience the first night.

Review collected in partnership with Days Inn ⓘ

| Value | | Rooms | | Location | |
|---|---|---|---|---|---|
| ▬▬▬▬ | 2.0 | ▬▬▬▬▬ | 3.0 | ▬▬▬▬▬▬▬ | 5.0 |
| **Cleanliness** | | **Service** | | **Sleep Quality** | |
| ▬▬▬▬▬ | 3.0 | ▬▬▬ | 2.0 | ▬▬ | 1.0 |

This review is the subjective opinion of a Tripadvisor member and not of Tripadvisor LLC. Tripadvisor performs checks on reviews as part of our industry-leading trust & safety standards. Read our transparency report to learn more.

👍 0 helpful votes

25.     Accordingly, Defendants knew or should have known that Plaintiff was a victim of a venture that involved sex trafficking by force, threat of force, fraud, or coercion.

26.     As a hotel owner and hotel operator, Defendants controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject property where Plaintiff was sex trafficked.

AMENDED COMPLAINT

27.    A significant portion of all sex trafficking in the United States of America occurs within the hospitality industry at hotels and motels.

28.    The hospitality industry is a major life source of the human trafficking epidemic both in the U.S. and abroad.[1] The United Nations,[2] international non-profits,[3] and the U.S. Department of Homeland Security,[4] have documented this well-known epidemic of human trafficking for years and brought particular attention to the indispensable role of hotels.

29.    In 2004, End Child Prostitution and Trafficking ("ECPAT-USA") launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States, identifying the steps companies would need to take to prevent child sex trafficking. ECPAT-USA identified hotels-specific best practices for preventing sex trafficking, such as: (1) not renting by the hour; (2) not permitting cash payments; (3) monitoring online sex ads such as Craigslist and Backpage for its hotel's name and pictures of the rooms; (4) changing Wi-Fi passwords in rooms and cafes regularly; (5) watching for a trend of visitors to the same room; (6) being aware of rooms with excess condoms, lubricants, and towels; (7) requiring all visitors to be logged, including guest name, visitor name, arrival time, departure time, and room number.

30.    Further, nationwide campaigns have recognized the issue of human trafficking in the hotel industry and the lack of internal policies to address the issue and took initiative as early

---

[1] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTELS ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3 /.

[2] *Global Report on Trafficking in Persons,* UNITED NATIONS OFFICE ON DRUGS AND CRIME (2020), 84 8available at https://www.unodc.org/documents/data-and analysis/tip/2021/GLOTiP_2020_15jan_web.pdf /. See also *We must act together to fight exploitation and human trafficking in tourism, say United Nations and international partners,* UNITED NATIONS OFFICE ON DRUGS AND CRIME (April 24, 2012) available at https://www.unodc.org/unodc/en/press/releases/2012/April/we-must-act-together-to-fight-exploitation-and-human-trafficking-in-tourism-say-united-nations-and-international-partners.html /.

[3] The Polaris Project and ECPAT-International have published extensive reports and professional toolkits on human trafficking in the hospitality industry for years.

[4] Human Trafficking and the Hospitality Industry, U.S. DEPARTMENT OF HOMELAND SECURITY (2020), available at https://www.dhs.gov/blue-campaign/hospitalityindustry /; Hospitality Toolkit, U.S. DEPARTMENT OF HOMELAND SECURITY (2016), available at https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf /.

AMENDED COMPLAINT

as 1997 with the United Nations Blue Heart Campaign[5] and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[6]

31.    These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry and both campaigns released free online resources and toolkits publicly accessible to any entity concerned with human trafficking.

32.    The passage of the Trafficking Victims Protection Act in 2000 and the passage of the TVPRA in 2008 as well as numerous other legislative initiatives, put the Defendants on notice of the high likelihood of these illegal acts occurring on the subject hotel premises which, at a minimum, warranted them to be more vigilant and proactive in preventing this conduct.

33.    Years before Plaintiff was trafficked, Defendants knew or should have known of the critical role that the hotel industry plays in enabling the sex trade industry and of the widespread national epidemic of hotel/motel sex trafficking.

34.    By 2012, training guides and videos were available through the American Hotel Lodging Association (AHLA) and ECPAT-USA and via other resources.

35.    Before and during the relevant period, Defendants failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotel.

36.    Due to the involvement and affirmative actions of Defendants (as owners and operators, and by its staff and employees while acting within the scope of their employment), in associating with, facilitating and enabling the undertaking of the sex trafficking of Plaintiff by her Trafficker on Defendants s' premises in violation of the TVPRA, including, but not confined to, by:

---

[5] *The Blue Heart Campaign,* UNITED NATIONS (2022), https://www.unodc.org/blue-heart/#:~:text=The%20Blue%20Heart%20Campaign,help%20prevent%20this%20heinous%20crime /.
[6] *DHS Blue Campaign Five Year Milestone*, DEP'T OF HOMELAND SECURITY (Jul. 22, 2015), https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone /.

AMENDED COMPLAINT

a. Defendants repeatedly rented rooms to Plaintiff's Trafficker when Defendants knew or should have known said Trafficker was engaged in sex trafficking on Defendants 's premises including as to Plaintiff in violation of the TVPRA;

b. Defendants associating with Plaintiff's Trafficker in an effort to force her to serve their business objective;

c. Defendants allowing commercial dealings with the aforesaid Trafficker (e.g., in the form of room rentals) to continue on the subject premises and to be reinstated for a profit motive;

d. Defendants 's staff and employees acting as lookouts and informants, during the scope of their employment, for the benefit of the Trafficker so as to alert the aforesaid Trafficker of police activity or similar type warning alerts, or otherwise failing to respond to clear signs of trafficking;

e. Defendants actively advancing the sex trafficking operation of Plaintiff's Trafficker by knowingly facilitating and negligently facilitating the venture's activities, i.e., the sex trafficking of Plaintiff; and,

f. Defendants was otherwise being actively involved and affirmatively enabling Plaintiff's Trafficker and facilitating the venture's success, Plaintiff was caused to be sex trafficked by her Trafficker on Defendants 's premises in violation of the TVPRA.

37. Before and during the relevant period, Defendants failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotel.

38. Defendants failed to act upon the obvious and overt signs alerting them to the sex trafficking taking place at the subject hotel, including as to Plaintiff herein and in violation of the TVPRA.

39. Had the Defendants timely and properly implemented policies and procedures common and reasonably accepted in the hospitality industry concerning anti-trafficking, safety and security it is more likely than not that the injuries suffered by the Plaintiff at the subject hotel would have been prevented or mitigated.

AMENDED COMPLAINT

40.     Due to the failure of Defendants to timely and properly implement anti-trafficking policies and practices, Plaintiff was repeatedly victimized and trafficked for sex on Defendants 's premises in violation of the TVPRA.

41.     Defendants s, by their passive or active involvement and affirmative enabling of the subject trafficking, was a proximate and competent cause and substantial factor in causing Plaintiff severe injuries in this case including, but not limited to, her being the victim of sex trafficking, which has caused Plaintiff severe injury.

42.     Because of the foregoing conduct of Defendants s, Plaintiff suffered severe and permanent injuries and damages, as outlined herein.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")

43.     Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

44.     Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against the above-captioned Defendants s.

45.     At all relevant times, Defendants were involved in the staffing and operation of the subject hotel where Plaintiff was trafficked for sex.

46.     Plaintiff is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

47.     As it pertains to this Plaintiff, Plaintiff was sex trafficked at the subject hotel owned and operated by Defendants s.

48.     Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. See 18 U.S.C. § 1591.

49.     Separately, § 1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking. See 18 U.S.C. §1595(a).

50.     More specifically, § 1595 provides for three distinct causes of action: (1) a claim against the Trafficker who directly violated § 1591(a)(1) – a criminal statute; (2) a beneficiary

AMENDED COMPLAINT

claim against the Trafficker who directly violated §1591(a)(2) – a criminal statute; and (3) a beneficiary claim against a civil Defendants who did not violate § 1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); the subject lawsuit is applicable to prong three, i.e. a beneficiary claim against a civil Defendants .

51.    In order to induce Plaintiff by force, fraud and coercion to engage in sex with sex buyers at the subject hotel, Trafficker used various means to do so including but not limited to (a) Trafficker utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendants 's staff; (b) Trafficker instilled in Plaintiff the fear of severe bodily injury and/or fear of death if Trafficker's directives were not complied with; (c) psychological coercion; (d) withholding Plaintiff's identifying document(s); and (e) other means of force, fraud and coercion used by the Trafficker of Plaintiff to induce sex with sex buyers at the subject hotel.

52.    Defendants knowingly benefited from the sex trafficking of Plaintiff at the subject hotel by receiving payment for the room(s) rented by her Trafficker (or at the direction of her Trafficker) that were used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA.

53.    Defendants rented room(s) to individuals it knew or should have known were engaged in the sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

54.    The rental of a hotels room constitutes a financial benefit from a relationship with the Trafficker sufficient to meet "financially benefitted" element of the §1595(a) standard.

55.    Plaintiff's Trafficker took proceeds derived from the sex trafficking occurring on the subject premises to continue to pay for room(s) rented at the subject hotel during the time that Plaintiff was being sex trafficked there in violation of the TVPRA.

56.    In addition, Defendants received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur (as Plaintiff was advertised by her Trafficker online) and from such Wi-Fi service Defendants s, upon information and belief, received financial benefit.

AMENDED COMPLAINT

57. Defendants participated in a venture by operating the subject hotel that rented rooms to individuals that Defendants knew or should have known were involved in sex-trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

58. During the time Plaintiff was trafficked at the subject hotel, Plaintiff's Trafficker had direct interaction with employees and staff of Defendants by means of paying, befriending, and/or compensating employees and staff members of said Defendants to act as lookouts/informants for Plaintiff's Trafficker, while acting in their scope of employment, so as to inform the Trafficker of police activity or other similar type alerts.

59. In this case, during the relevant period alleged herein, Defendants took part in a common undertaking or enterprise involving risk and potential profit with Plaintiff's Trafficker that violated the TVPRA.

60. Operating a hotel and renting out rooms is an enterprise involving risk and potential profit.

61. Defendants operating the subject hotel and renting out rooms to Plaintiff's Trafficker was an enterprise involving risk and potential profit.

62. Defendants operating the subject hotel and renting out rooms to Plaintiff's Trafficker was an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff herein.

63. By renting rooms to Plaintiff's Trafficker, Defendants s, the hotel owner and operator, were associating with Plaintiff's Trafficker in an effort to force Plaintiff to serve their business objective.

64. The modus operandi of the Trafficker was to renew the room(s) rental daily.

65. A continuous business relationship existed between the subject hotel, its agents, employees and staff, and Plaintiff's Trafficker, in part, in that the Defendants repeatedly rented rooms, and/or repeatedly renewed room rentals, to individuals they knew or should have known were involved in sex trafficking on the premises, including as to the Plaintiff.

66. Plaintiff's Trafficker had prior commercial dealings with the subject hotel which the Trafficker and Defendants wished to reinstate for profit when Plaintiff's Trafficker repeatedly

- 13 -

AMENDED COMPLAINT

rented rooms and/or repeatedly renewed room rentals that were used for trafficking of victims including Plaintiff.

67.     The Defendants had constructive and actual knowledge that the undertaking or enterprise violated the TVPRA as to the Plaintiff.

68.     Defendants knew or should have known about the nature of the sex trafficking occurring at the subject hotel, including as they related to Plaintiff, a victim, due to the many red flags then and there existing, including but not limited to:

(a) constant foot traffic of sex buyers to the Trafficker's rented rooms to have sex with trafficked victims;

(b) trafficked victims would walk around hotel grounds while impaired by drug and/or alcohol, while sleep deprived, while hygiene impaired, while behavior impaired, with visible bruising, being malnourished, and being dressed in sexually explicit clothing;

(c) suspicious individuals loitering outside the hotels rooms when a sex buyer would enter a room;

(d)  inside the hotel rooms rented by the Trafficker (or at the direction of the Trafficker) there was a suspicious bunch of people and suspicious items including cash, drugs, drug paraphernalia, condoms, lubricants which was observed by housekeeping staff and in plain sight of housekeeping staff;

(e) Trafficker monitoring hotel hallways, monitoring doors of rooms and walking hotel perimeter;

(f) Trafficker shadowing Plaintiff (or having another shadow Plaintiff) in plain sight of hotel staff;

(g) Plaintiff soliciting for sex buyers on the hotel premises at the direction of her Trafficker,

(h) Plaintiff's room exhibited signs of commercial sex work,

(i) loud noise and yelling emanating from room where sex trafficking of Plaintiff was occurring,

(j) Trafficker utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendants s' staff,

(k) overt evidence that Plaintiff was being induced by force, fraud and coercion to have sex with sex buyers on the subject premises, e.g. (1) visible bruising (2) overt physical deterioration of Plaintiff, (3) physical and/or verbal abuse occurring in common areas of the subject hotel in view and/or earshot of staff of Defendants , (4) Trafficker overtly

- 14 -

AMENDED COMPLAINT

asserting control over Plaintiff in common areas of the hotels in view and/or earshot of staff of Defendants (5) intermittent screaming from room(s) where trafficking of Plaintiff occurred sufficiently loud to be heard by staff outside the room, and

(l) other commonly known sex trafficking red flags which the above captioned Defendants knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotels.

69.     Defendants' staff witnessed and observed signs and indicators of sex trafficking including items set forth in the paragraph above.

70.     When being trafficked at the subject hotel, Plaintiff interacted with Defendants' staff, and Defendants' staff witnessed and observed Plaintiff, Trafficker, and a frequent procession of sex buyers going in and out of the rooms rented by Trafficker, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

71.     Plaintiff knows that individuals that witnessed and observed red flags indicative for suspicion for sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or by means of the staff wardrobe/name-tag/hotel logo and/or by means of a staff member being in an employee restricted area.

72.     Defendants were involved and affirmatively took actions as the hotel owners and operators on Defendants' subject premises during the relevant time period to advance the objective of this undertaking by (a) Defendants repeatedly renting rooms to Plaintiff's Trafficker when Defendants knew or should have known said Trafficker was engaged in sex trafficking on Defendants' premises, including as to Plaintiff in violation of the TVPRA; (b) Defendants associating with Plaintiff's Trafficker in an effort to force her to serve their business objective; (c) Defendants allowing commercial dealings with the aforesaid Trafficker to continue on the subject premises and to be reinstated for a profit motive; (d) staff and employees of Defendants acting as lookouts and informants, while in the scope of their employment, for the benefit of the Trafficker so as to alert the aforesaid Trafficker of police activity or similar type warning alerts; (e) Defendants knowingly facilitating and/or negligently facilitating the Trafficker's activities, i.e., the sex trafficking of Plaintiff; and (f) in otherwise being actively involved and affirmatively enabling Plaintiff's Trafficker and facilitating their venture's success.

- 15 -
AMENDED COMPLAINT

73.    Defendants ' failure, by its agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including, but not limited to, being the victim of sex trafficking when at this subject hotel and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day, while being trafficked, and while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries.

74.    These Defendants, during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs or alcohol, (2) guest creating a nuisance to the public, (3) guest believed to be using a hotel room for unlawful purposes, (4) guest using hotel amenities and premises for unlawful acts, (5) guest bringing in extra or unregistered guests, (6) guest's behavior reasonably disturbing other guests, (7) guest violating other rules set by the hotels, and (8) for other indicated reasons.

75.    Plaintiff being sex trafficked at this subject hotel was a proximate cause, competent cause, and substantial factor in causing her severe and permanent injuries including, but not limited to, personal injuries including the horror of being a victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked.

76.    As a direct and proximate result of Defendants ' involvement and multiple failures to act, mandate, establish, execute anti-trafficking measures and modify their anti-trafficking efforts at its hotels property, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendants ' hotels in violation of the TVPRA.

77.    Because of being sex trafficked at the subject hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

**COUNT II**

- 16 -

AMENDED COMPLAINT

**VIOLATION OF CHILD ABUSE VICTIMS RIGHTS ACT, 18 U.S.C. § 2255 ("CAVRA")**

78.     Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

79.     Any person who, while a minor, "was a victim of a violation of section . . . 1591 [among others] . . . and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred." 18 U.S.C. § 2255.

80.     Plaintiff was a minor at the time of the sex trafficking described herein in violation of § 1591.

81.     Because of being sex trafficked at the subject hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

**COUNT III**
**NEGLIGENCE, GROSS NEGLIGENCE, AND RECKLESSNESS**

82.     Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

83.     At all times relevant, Defendants owed a duty to protect Plaintiff from harm while in the care of Defendants and/or Defendants' agents, including but not limited to, Plaintiff.

84.     Defendants violated their duty, and were negligent, careless, grossly negligent, and/or reckless as follows:

    a.     By failing to establish adequate sex trafficking prevention policies, procedures, and practices;

    b.     By failing to make mandatory and adhere (and ensure adherence) to such policies, procedures, and practices;

    c.     By failing to retain, hire, train, and supervise agents/employees with regard to the prevention of sex trafficking;

    d.     By failing to adequately monitor and supervise the premises and/or Trafficker and Plaintiff;

    e.     By failing to know and react to the risks of sexual trafficking inherent in its activities;

    f.     By failing to require sex trafficking training;

- 17 -

AMENDED COMPLAINT

g.  By failing to recognize the signs that Trafficker was a sex trafficker or that Plaintiff was being sex trafficked;

h.  By failing to report Trafficker to the appropriate authorities; and,

i.  By violating the duties imposed upon them pursuant to the Restatement of Torts, Second, §§ 314A, 315, 317, 323, 324A, 343, 344, & 371.

85.  As a direct and proximate cause of Defendants' actions and omissions, and breach of the duties of reasonable care, Plaintiff were injured, resulting in damages.

**COUNT IV**
**CLAIM FOR CHILDHOOD SEXUAL ASSAULT PURSUANT TO**
**CAL. CODE OF CIVIL PROCEDURE § 340.1**

86.  Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

87.  Plaintiff was a minor at the time of the sex trafficking described herein.

88.  Plaintiff's Trafficker was a resident at Defendants' premises at the time Plaintiff was sex trafficked.

89.  As a direct and proximate result of the conduct of Defendants, Plaintiff was subjected to sexual abuse, causing severe trauma and emotional distress to Plaintiff.

90.  As a legal, direct, and proximate result of the aforementioned conduct of Defendants , Plaintiff has been injured and hurt in her health, strength and activity, sustaining serious injuries to her body, and shock and injury to her nervous system and person, all of which said injuries have caused and continue to cause Plaintiff great physical and mental pain and suffering. Plaintiff is further informed and believes, and thereon alleges, that said injuries will result in some or all permanent disabilities to her general damages in an amount which will be stated according to proof, pursuant to California Code of Civil Procedure Section 425.10.

91.  As a legal, direct and proximate result of the aforementioned conduct of Defendants, Plaintiff will also sustain a loss of earning capacity and loss of opportunity, as well as additional economic damages, according to proof, pursuant to California Code of Civil Procedure Section 425.10.

92.  As a legal, direct and proximate result of the aforementioned conduct of Defendants , Plaintiff has been compelled to and did and will continue to employ the services of hospitals,

physicians, surgeons, nurses and the like, to care for and treat her, and did incur hospital, medical, professional and incidental expenses, and Plaintiff is informed and believes, and thereon alleges, that by reason of her injuries, will necessarily incur additional like expenses for an indefinite period of time in the future, the exact amount of which expenses will be stated according to proof, pursuant to California Code of Civil Procedure Section 425.10.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

93.    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

94.    Defendants engaged in reckless, extreme, and outrageous conduct by providing Trafficker with rooms, despite knowing that Trafficker would likely use these rooms to traffic women and girls, including Plaintiff. Defendants' misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by them of the consequences that would follow.

95.    As a result of this reckless, extreme, and outrageous conduct by Defendants, Plaintiff was trafficked. Defendants knew that this reckless, extreme, and outrageous conduct would inflict severe emotional and psychological distress, including personal physical injury, on others, and Plaintiff did in fact suffer severe emotional and psychological distress and personal physical injury as a result, including severe mental anguish, humiliation, and emotional and physical distress.

96.    As a direct and proximate result of the above-described conduct, Plaintiff suffered, and will continue to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life, and Plaintiff was prevented from performing daily activities and obtaining the full enjoyment of life.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants  as identified in the above-referenced Count and as follows:

a) All available compensatory damages for the described losses with respect to the above cause of action;
b) Past and future emotional distress;
c) Consequential and/or special damages;
d) All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;
e) Disgorgement of profits obtained through unjust enrichment;
f) Restitution;
g) All damages allowable under the TVPRA;
h) Reasonable and recoverable attorney's fees;
i) Punitive damages with respect to each cause of action;
j) Costs of this action; and
k) Pre-judgement and all other interest recoverable

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

AMENDED COMPLAINT

Respectfully Submitted,

Dated:                          /s/ Jeffrey C. Toppe (Cal. Bar. No. 329535)
                                Jeffrey Toppe, Esq.
                                The Toppe Firm, LLC
                                c/o 4503 N. Front Street
                                Harrisburg, PA 17110
                                800-706-2764 (phone)
                                717-525-9143 (fax)
                                jct@toppefirm.com

                                Ryan P. Dickinson, Esquire (*application for pro hac vice admission forthcoming*)
                                Andreozzi + Foote
                                4503 N Front Street
                                Harrisburg, PA 17110
                                800-706-2764 (phone)
                                717-525-9143 (fax)
                                ryan@vca.law

                                *Attorney for Plaintiff*

- 21 -
AMENDED COMPLAINT