UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

C.U.,

Plaintiff,

v.

VIRPUR INVESTMENTS, LLC,

Defendant.

No. 2:25-cv-01393-DJC-JDP

ORDER

Plaintiff was the victim of sex trafficking as a minor. While her abuser was held to criminal account, she now brings a civil action against the owner and operator of the hotel at which she was trafficked, arguing that the hotel owner is liable under the federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, the federal Child Abuse Victims Rights Act, as well as under various state common law theories. Typically, a hotel owner would not be liable to the victim of sex trafficking simply by virtue of renting a room to the victim's exploiter. Here, however, Plaintiff alleges that evidence of her being trafficked would have been obvious to hotel employees, who were alleged to have actively assisted her exploiter. If proven, these facts would be sufficient to state a claim for relief under the various theories alleged by Plaintiff. The Court accordingly denies the pending motion to dismiss.

## BACKGROUND[1]

Plaintiff C.U., an Arizona resident, filed a Complaint in this Court on May 16, 2025, alleging that she was sexually trafficked at Defendant Virpur Investments, LLC's ("Defendant") Rancho Cordova hotel in 2015. (*See* Compl. (ECF No. 1); FAC (ECF No. 14).) At the time she was trafficked, Plaintiff was a minor. (FAC ¶ 16.) Plaintiff was initially kidnapped by her trafficker, Abdul Basier Hashimi ("Hashimi"), and forced to engage in sex work. (*Id.* ¶¶ 15, 17.) Hashimi threatened to kill Plaintiff and plied her with drugs and alcohol to make her comply. (*Id.* ¶ 18.) Hashimi advertised Plaintiff for sex online. (*Id.* ¶ 19.) Plaintiff was eventually rescued from the hotel by police and Hashimi would ultimately plead guilty to sex trafficking minors. (*Id.* ¶¶ 20–21.) Sex trafficking was alleged to have occurred at the subject hotel prior to Plaintiff's trafficking and was known to Defendant. (*Id.* ¶ 22.) At least as early as 2012, guests at the hotel would leave reviews complaining that prostitution was openly occurring at the premises. (*Id.* ¶ 23.) These reviews continued into 2015, when Plaintiff was trafficked at the hotel. (*Id.* ¶ 24.) Accordingly, Plaintiff alleges that Defendant knew or should have known that Plaintiff was a victim of a venture that involved sex trafficking by force, threat of force, fraud, or coercion. (*Id.* ¶ 25.)

Plaintiff brings five counts against Defendant:

Count 1: Violation of the federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595, by "knowingly benefit[ting], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter";

---

[1] The Court assumes the truth of Plaintiff's factual allegations. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Moss v. U.S. Secret Servs.*, 572 F.3d 962, 970 (9th Cir. 2009) (citation omitted).

Count 2: Violation of Child Abuse Victims Rights Act, 18 U.S.C. § 2255, for the "substantial" personal injuries she suffered "as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. § 1591[;]"

Count 3: Negligence, Gross Negligence, and Recklessness;

Count 4: Childhood Sexual Assault pursuant to California Code of Civil Procedure § 340.1; and

Count 5: Intentional Infliction of Emotional Distress.

(*See generally* FAC.) On February 17,2026, Defendant filed a Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Mot. (ECF No. 24).) The Motion is fully briefed. (Opp'n (ECF No. 30); Reply (ECF No. 31)[2].) After hearing oral argument on May 21, 2026, the Court took the matter under submission. (ECF No. 39.)

**LEGAL STANDARD**

A party may move to dismiss for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). While the court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party," *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019), if the complaint's allegations do not "plausibly give rise to an entitlement to relief" the motion must be granted, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This rule demands more than unadorned accusations; "sufficient factual matter" must make the

[2] Defendant's Reply is untimely, having been filed a month after the Opposition. As the Court will deny the Motion, there is no prejudice to Plaintiff by considering the untimely Reply.

claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id*. at 679.

## DISCUSSION

Plaintiff asserts several claims against Defendant arising out of her alleged sex trafficking in 2015. The Court will address each claim in turn.

### I. Plaintiff adequately pleads a TVPRA claim

Congress enacted the Trafficking Victims Protection Act in 2000 "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1164 (9th Cir. 2022) (internal quotation marks omitted). In 2003, Congress added a civil remedy provision codified at 18 U.S.C. § 1595. *Id.* Congress again reauthorized and amended the TVPRA in 2008 "to expand the civil remedies provision." *Id.* It now states:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). Plaintiff brings a claim against Defendant under a theory of beneficiary liability. (FAC ¶ 50 ("[T]he subject lawsuit is applicable to prong three, i.e., a beneficiary claim against a civil Defendant[.]")). In rebuttal, Defendant contends that

"Plaintiff fails to present facts suggesting the Defendant had any interaction with Plaintiff's alleged traffickers or that the Defendant knowingly participated in a "venture" that trafficked Plaintiff." (Opp'n at 13.)

To state a claim under a section 1595(a) beneficiary theory, Plaintiff must allege facts from which it can be reasonably inferred that Defendant (1) "knowingly benefit[ted] financially or by receiving anything of value"; (2) from participation in a venture; (3) they "knew or should have known has engaged in" sex trafficking. *J.C. v. Choice Int'l, Inc.*, No. 3:20-cv-00155-WHO, 2020 WL 6318707, at *4 (N.D. Cal. Oct. 28, 2020) (citation omitted).

**A. Knowing financial benefit**

Plaintiff has adequately alleged that Defendant knowingly received a financial benefit from her trafficking. "The 'knowingly benefit' element of section 1595 'merely requires that Defendant knowingly receive a financial benefit' and the rental of a room . . . constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element." *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 5:20-cv-00656-BLF, 2020 WL 4368214, at *4 (N.D. Cal. Jul. 30, 2020) (citation omitted). Here, Plaintiff alleges that Defendant "repeatedly rented rooms to Plaintiff's Trafficker" and "receiv[ed] payment for the room(s) rented." (FAC ¶¶ 36(a), 52, 54.); *see also S.G. v. Vagabond Inn Corp.*, No. 8:21-cv-00955-PSG-KES, 2022 WL 22903718, at *4 (C.D. Cal. Mar. 2, 2022) (finding allegations of financial benefit through room rentals sufficient); *see also Doe (S.A.S.) v. ESA P Portfolio LLC*, No. 3:23-CV006038-TMC, 2024 WL 3276417, at *9 (W.D. Wash. Jul. 2, 2024) (same). Accordingly, this element is satisfied.

**B. Participation in a venture**

Plaintiff also satisfies the second element. This element requires plausible allegations that Defendant participated in the challenged venture. *See B.M.*, 2020 WL 4368214, at *4. Other courts in the Ninth Circuit have explained "[i]n the absence of direct association with traffickers, Plaintiff must 'allege at least a showing of a continuous business relationship . . . such that it would appear that the trafficker and

[Defendant] have established a pattern of conduct or could be said to have a tacit agreement." *S.G.*, 2022 WL 22903718, at *5. The facts pled must be sufficient to "connect the dots" between Plaintiff's alleged sex trafficking and the Defendant. *B.M.*, 2020 WL 4368214, at *5. Importantly, Plaintiff is not required to allege an "overt act in furtherance of a sex trafficking venture." *J.C.*, 2020 WL 6318707, at *7. Nevertheless, "the standard hotel-guest relationship, standing alone, does not constitute participation in a trafficking venture." *R.T. v. RRI West Mgmt. LLC*, No. 2:24-cv-590, 2025 WL 961531, at *3 (W.D. Wash. Mar. 31, 2025).

Plaintiff alleges that Defendant Virpur is "a hotel owner, hotel operator, franchisee, manager, and/or supervisor" of the subject hotel during the relevant period. (FAC ¶ 10.) Plaintiff contends that Defendant took affirmative actions to facilitate the venture of Plaintiff's sex trafficking. (*See, e.g.*, FAC ¶¶ 57–66.) Specifically, Plaintiff contends that "at all relevant times" Defendant was "involved in the staffing and operation of the subject hotel where Plaintiff was trafficked for sex." (*Id.* ¶ 45.) Plaintiff also alleges that by "operating the subject hotel and renting out rooms to Plaintiff's Trafficker," Defendant was engaged in "an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff." (*Id.* ¶ 62.) Defendant contends that merely alleging that Defendant rented rooms out describes "nothing more than an ordinary commercial transaction" and that Plaintiff attempts to impose liability based on "an alleged failure to prevent trafficking." (Opp'n at 15–16.) This description, however, is belied by the specific allegations in the Complaint.

The FAC provides well-pled allegations that Defendant's staff and employees should have been or were aware of Plaintiff's trafficking through numerous red flags that are sufficient to establish "participation" and go beyond mere arms-length business transactions. These allegations include:

- Trafficker shadowing Plaintiff . . . in plain sight of hotel staff;
- Plaintiff soliciting for sex buyers on the hotel premises at the direction of her Trafficker;

- Plaintiff's room exhibited signs of commercial sex work;
- Loud noise and yelling, including screaming, emanating from room where sex trafficking of Plaintiff was occurring;
- Visible bruising, overt physical deterioration of Plaintiff, physical and verbal abuse occurring within plain sight and earshot of Defendants, Trafficker overtly asserting control over Plaintiff in view and/or earshot of staff;
- During the time Plaintiff was trafficked at the subject hotel, Plaintiff's Trafficker had direct interaction with employees and staff of Defendants by means of paying, befriending, and/or compensating employees and staff members of said Defendant to act as lookouts/informants for Plaintiff's trafficker, so as to inform the Trafficker of police activity or other similar type alerts; and
- Plaintiff knows that individuals that witnessed and observed red flags indicative for suspicion of sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or means of the staff wardrobe/nametag/hotel logo and/or by means of a staff member being in an employee restricted area.

(*See, e.g.*, FAC ¶¶ 58, 68, 71.) In connection with Plaintiff's young age as a minor (FAC ¶ 16), these allegations plausibly establish Defendant's participation in a venture that facilitated Plaintiff's sex trafficking. In particular, the allegation that hotel staff acted as a lookout or informant for the benefit of the Trafficker goes beyond "routine business operations and shows a symbiotic relationship with the traffickers aimed at evading law enforcement detection." *R.T.*, 2025 WL 961531, at *3. Defendant's assertion in the Reply that Plaintiff "does not allege that Virpur employees acted as police lookouts . . . or directly observed obvious abuse[,]" (Reply at 7–8), is contradicted by the Complaint's allegations.

*B.M. v. Wyndham Hotels & Resorts, Inc.* is also instructive. In *B.M.*, the court found similar sexual trafficking allegations were sufficient to "support a theory that the *staff* at the franchisee hotels where Plaintiff was trafficked knew or should have known about her trafficking." 2020 WL 4368214, at *6 (emphasis added). Here, Plaintiff has asserted a claim against Defendant as the hotel franchisee and operator of the premises. This is materially different from the situation presented in *B.M.* and other defendant franchisor cases, in which the plaintiff was attempting to hold the parent companies (rather than the subject hotel) liable under a beneficiary theory. While the court in *B.M.* found that plaintiff had sufficiently alleged culpability by the subject hotel, plaintiff failed to sufficiently allege participation in a venture as to the defendant franchisor because plaintiff had not alleged facts as to "how" the defendant franchisors knew or should have known about the sex trafficking. *Id.*; *see also S.G.*, 2022 WL 22903718, at *7 (applying a direct beneficiary theory and concluding plaintiff "failed to allege sufficient facts to support a plausible inference that [defendant franchisors] themselves "knew or should have known" about Plaintiff's sex trafficking at their franchisee hotels.") In contrast, here, Defendant is the franchisee and operator of the premises, which is materially different from a distant defendant franchisor:

- "As hotel owner and hotel operator, Defendant[ ] controlled the training policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules, and guidelines for its subject property where Plaintiff was sex trafficked." (FAC ¶ 26.)
- "Defendant[ ] operating the subject hotel and renting out rooms to Plaintiff's Trafficker was an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff." (FAC ¶ 62.)
- "By renting rooms to Plaintiff's Trafficker, Defendant[ ], the hotel owner and operator, were associating with Plaintiff's Trafficker in an effort to force Plaintiff to serve their business objective." (FAC § 63.)

Accordingly, the Court concludes that Plaintiff has adequately alleged Defendant's participation in a venture.

**C. Knew or should have known the venture was engaged in trafficking**

Plaintiff also satisfies the third element for beneficiary liability. As previewed above, Plaintiff has sufficiently alleged that Defendant should have known the venture was engaged in sex trafficking of a minor as opposed to commercial sex between adults or prostitution generally. Specifically, the allegations of her minor status in connection with her "soliciting for sex buyers on the hotel premises," "constant foot traffic of sex buyers," signs of "visible bruising," "overt physical deterioration of Plaintiff," "intermittent screaming from room(s) where trafficking of Plaintiff occurred sufficiently loud to be heard by staff outside the room," "staff and employees of Defendant[ ] acting as lookouts and informants . . . for the benefit of Trafficker," and "physical and/or verbal abuse occurring . . . in view and/or earshot of staff" sufficiently establishes that Defendant knew or should have known Plaintiff was being sex trafficked. (FAC ¶¶ 16, 68–71.)

Having satisfied all three elements for beneficiary liability, the Court concludes that Plaintiff has stated a claim under the TVPRA and thus DENIES the Motion to Dismiss on this issue.

**II. CAVRA Claim**

Plaintiff also asserts a claim under another federal statute, the Child Abuse Victims Rights Act, 18 U.S.C. § 2255. Under this statute, Plaintiff must demonstrate that (1) while a minor, she was a victim of a violation under one of the statutes enumerated in § 2255; (2) she suffered personal injury; and (3) said personal injury was the result of a statutory violation. *A.M. v. Mumma*, No. 1:22-cv-00548-JLT-SKO, 2022 WL 2178821, at *3 (E.D. Cal. May 13, 2022) (citation omitted).

As discussed, Plaintiff has adequately alleged that she was sexually trafficked under 18 U.S.C. § 1591, which is a qualifying predicate statute for purposes of the Child Abuse Victims Rights Act. Plaintiff has alleged that she was sexually trafficked by

her Trafficker, who subsequently pled guilty to sex trafficking minors. (FAC ¶ 21.) Section 1591 also includes those who "knowingly benefit financially" from such a venture, which encompasses Defendant, as discussed earlier. *See also Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021) (explaining that "participation in a venture" requires only an allegation that defendant took part in a common undertaking or enterprise involving risk and potential profit).

Accordingly, the Court concludes that Plaintiff has stated a claim under the Child Abuse Victims Rights Act. The Court DENIES the Motion to Dismiss as to this issue.

**III. Childhood Sexual Assault Claim**

**A. Statute of Limitations**

California's statute of limitations for a Childhood Sexual Assault claim was recently amended, as discussed below. As to personal injury actions such as intentional infliction of emotional distress and negligence, the statute of limitations is ordinarily two years. Cal. Code Civ. Proc. § 335.1. The Complaint alleges that Plaintiff was born in 1998. (FAC ¶ 8.) The conduct at issue allegedly occurred in 2015 and Plaintiff would have turned 18 sometime in 2016. This lawsuit was filed May 16, 2025, which is well outside the 2-year statute of limitations provided in California law.

In 2023, however, the California legislature amended claims for childhood sexual assaults occurring before January 1, 2024. Under Code of Civil Procedure section 340.11, any damages claim for childhood sexual assault that has not been litigated to finality, and that would be barred as of January 1, 2020, because the applicable statute of limitations expired, is revived, and the claim may be commenced by the latter of (a) "within three years of January 1, 2020" or (b) "the time period under subdivision (a) as amended by the act that added this subdivision." Code Civ. Proc. § 340.11(q).

In turn, subdivision (a) provides that "in an action for recovery of damages suffered as a result of childhood sexual assault that occurred before January 1, 2024,

the time for commencement of the action shall be within 22 years of the date the plaintiff attains the age of majority . . . ." *Id.* § 340.11(a)(1). The statute further provides that this time limit also applies to actions against third parties who owed a duty of care to the plaintiff and whose wrongful, negligent, or intentional acts were the legal cause of her childhood sexual assault. *Id.* § 340.11(a)(1)(B)–(C).

Accordingly, as Plaintiff filed this action within 22 years of the alleged events in 2015, her California childhood sexual assault claim and derivative common-law claims are timely.

**B. California Childhood Sexual Assault Act**

Under Count IV, Plaintiff asserts a claim under California's Childhood Sexual Assault Act. Code Civ. Proc. § 340.1. Plaintiff asserts that a violation of Penal Code § 236.1, subds. (a)–(c), constitutes a predicate violation to assert a claim under this California statute. While Plaintiff is correct, however, she cites to the wrong statute. Accordingly, the correct provision is § 340.11, which provides for childhood sexual assault claims originating prior to January 1, 2024. Code Civ. Proc. § 340.11(a)(1).

Penal Code § 236.1 is a criminal statute that proscribes human trafficking. There are three distinct sections. Under subsection (a), when a person "deprives or violates the personal liberty of another with the intent to obtain forced labor or services," that person "is guilty of human trafficking . . . ." Pen. Code § 236.1(a). Under subsection (b), a person "who deprives or violates the personal liberty of another with the intent to effect or maintain a violation" of certain Penal Code offenses is "guilty of human trafficking . . . ." *Id.* § 236.1(b). Under subsection (c), a person who "causes, induces, or persuades, or attempt to cause, induce, or persuade, a person who is a minor at the time of commission of the offense to engage in a commercial sex act, with the intent to effect or maintain a violation" of certain enumerated Penal Code offenses "is guilty of human trafficking." *Id.* § 236.1(c). "A commercial sex act is 'sexual conduct on account of which anything of value is given or received by a person.'" *People v. Shields*, 23 Cal. App. 5th 1242, 1249 (2018) (citing Penal Code

§ 236.1(h)(2)). As discussed in previous sections, Plaintiff has adequately alleged that she was "subjected to sexual abuse" as a minor and "injured and hurt in her health, strength and activity, sustaining serious injuries to her body . . . ." (FAC ¶¶ 87, 89–90.)

Importantly, a plaintiff may assert a claim under this statute against "any person or entity who owed a duty of care to the plaintiff, if a wrongful or negligent act by that person or entity was a legal cause of the childhood sexual assault that resulted in the injury to the plaintiff." Code Civ. Proc. § 340.11(a)(2)(B). As more fully developed below in the negligence section, the Court finds that Defendant owed Plaintiff a duty of ordinary care as a hotel franchisee and operator such that Defendant's failure to act was the legal cause of Plaintiff's harm. Indeed, Plaintiff has alleged Defendant's staff took affirmative steps during working hours to protect the Trafficker by acting as lookouts and informants, thus furthering her abuse. (FAC ¶ 72.)

Accordingly, the Court concludes that Plaintiff has stated a claim for violation of California's Childhood Sexual Assault Act and denies the Motion to Dismiss as to this claim.

## IV. Plaintiff's Remaining Claims

### A. Negligence

Under California law, the elements of a negligence tort cause of action are duty, breach, causation, and damages. *Brown v. USA Taekwondo*, 40 Cal. App. 5th 1077, 1091 (2019). In general, each person has a duty to act with reasonable care under the circumstances. *Regents of Univ. of California v. Superior Ct.*, 4 Cal. 5th 607, 618 (2018) (citing Cal. Civ. Code § 1714(a), establishing a "general duty of each person to exercise, in his or activities, reasonable care for the safety of others.") "However, 'one owes no duty to control the conduct of another, nor to warn those endangered by such conduct.'" *Id.* at 619.

#### 1. Duty

The Court concludes Defendant owed Plaintiff a duty of ordinary care. While Civil Code section 1714(a) is broad, it "has limits." *Kuciemba v. Victory Woodworks,*

*Inc.*, 14 Cal. 5th 993, 1016 (2023) (citation omitted). It "imposes a general duty of care on a defendant when it is the defendant who has 'created a risk' of harm to the plaintiff, including when 'the defendant is responsible for making the plaintiff's position worse.'" *Id.* (quoting *Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 716 (2001)). While the existence of a special relationship "between the plaintiff and the defendant is one basis for finding liability premised on the conduct of a third party . . . [the California Supreme Court] has never held that such a relationship is a prerequisite to finding that a defendant had a duty to prevent injuries due to *its own* conduct or possessory control." *Id.* at 1017-18. The "no-duty-to-protect rule will not relieve the defendant of an otherwise applicable duty to exercise reasonable care when, by its own conduct, the defendant has increased the risk of harm to the plaintiff." *Id.* at 1018 (quoting *Brown*, 11 Cal. 5th at 215 n.7). These principles apply here.

To determine whether a defendant owes a plaintiff a duty of care under section 1714(a), courts undertake a two-step inquiry. First, courts determine "whether the defendant's 'entire conduct created a risk of harm' to the plaintiff." *Kuciemba*, 14 Cal. 5th at 1017. If section 1714(a) applies, courts then ask whether the resulting duty ought to be narrowed or excepted based upon an analysis of the factors delineated in *Rowland v. Christian*. *Id.* at 1021.

The first step of this inquiry is "relatively straightforward: courts must determine whether the plaintiff's cause of action is based upon a claim that the defendant's affirmative conduct itself . . . placed plaintiffs in a dangerous position and created a serious risk of harm to which they otherwise would not have been exposed." *Doe v. Uber Tech., Inc.*, No. 22-16562, 2025 WL 80365, at *4 (9th Cir. Jan. 13, 2025) (cleaned up). Courts look to the <u>nature</u> of the plaintiff's theory of liability to determine whether they have properly raised such a claim. *Id.* (citation omitted) (emphasis in original). If so, the plaintiff's "action . . . is based upon a claim of misfeasance, not nonfeasance,"

*Lugtu*, 26 Cal. 4th at 717–18, and "the question of duty is governed by the standards of ordinary care," *Weirum v. RKO General, Inc.*, 15 Cal. 3d 40, 49 (1975).

Here, looking at the FAC, Plaintiff has sufficiently alleged that Defendant's affirmative conduct furthered and contributed to her risk of harm. (*See generally* FAC.) While several of her allegations are couched in Defendant's failure to act, (*see, e.g.*, FAC ¶ 84), Plaintiff also pleads that Defendant's staff affirmatively enabled her ongoing harm by protecting and alerting the Trafficker to police presence, (FAC ¶ 72). Defendant's assertion that Plaintiff "does not allege facts plausibly showing that [Defendant] consciously disregarded a known danger to Plaintiff" is simply incorrect and contradicted by the allegations pled. (Reply at 10.)

Because Defendant, as alleged, affirmatively created and/or contributed to the risk of Plaintiff's harm, the Court need not reach "the alternate rule that . . . the law does not impose a duty to control, warn, or protect unless there is a special relationship between the parties . . . ." *Kuciemba*, 14 Cal. 5th at 1017 (distinguishing cases where defendant "did not create or contribute" to third-party's sexual abuse of plaintiff and explaining that, in such cases, the "default duty rule of Civil Code section 1714" did not apply). Plaintiff's allegations are a sufficient basis to find that Defendant had a duty to use ordinary care in its own conduct toward Plaintiff and that Defendant's "entire conduct" contributed to her risk of harm at the hands of her Trafficker.

**i. *Rowland* Factors**

Having found a general duty of care, the Court next determines whether it ought to be narrowed or excepted due to the "compelling policy considerations," as determined upon analysis of the *Rowland* factors. *Doe*, 2025 WL 80365, at *5. *Rowland* factors can be generally broken down into "foreseeability" factors and "public policy" considerations. *Hughes v. Apple, Inc.*, 723 F.Supp.3d 693, 701 (2024); *Fleites v. MindGeek S.A.R.L.*, 801 F. Supp. 1045, 1083 (C.D. Cal. 2025). *"Rowland's* multifactor test was not designed as a freestanding means of <u>establishing</u> duty, but

instead as a means for deciding whether to limit a duty derived from other sources, like Civil Code section 1714." *Kuciemba*, 14 Cal. 5th at 1021 (cleaned up) (emphasis in original). The *Rowland* factors are as follows:

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Rowland*, 69 Cal. 2d at 113.

Foreseeability is "[t]he most important factor to consider." *Kesner v. Superior Ct.*, 1 Cal. 5th 1132, 1145 (2016). Here, given the totality of the allegations in the FAC, the Court concludes that Plaintiff's risk of harm was foreseeable. Among other allegations, Plaintiff alleged that Defendant was aware of, or should have been aware of, clear red flags of sexual trafficking both before and during the time of her trafficking and that Defendant's staff took steps to affirmatively protect the Trafficker. "[N]umerous examples of similar incidents that occurred prior to [Plaintiff's] assault as well as evidence that [Defendant] was aware of these incidents" was sufficient to show foreseeability. *Doe*, 2025 WL 80365, at *6. As to "the degree of certainty that the plaintiff suffered injury," given that she has alleged that she suffered extensive and tangible physical harm, such a personal injury claim is "amenable to compensation." *Kuciemba*, 14 Cal. 5th at 1023. The third *Rowland* factor, closeness of the connection between conduct and injury, "is strongly related to the question of foreseeability itself." *Id.* (citation omitted). "Where the third party's intervening conduct is foreseeable or derivative of the defendant's, then that conduct does not diminish the closeness of the connection between defendant's conduct and plaintiff's injury." *Id.* at 1023–24 (cleaned up and citation omitted). Here, taking the FAC as true, the

Trafficker's conduct is both foreseeable and derivative of Defendant's enabling of it. Thus, the foreseeability analysis does not weigh in favor of limiting Defendant's duty to its hotel guests.

Next, as to the policy factors, the "policy analysis evaluates whether certain kinds of plaintiffs or injuries should be excluded from relief." *Kuciemba*, 14 Cal. 5th at 1022. The Court finds that such an exception is not warranted here. "The California Supreme Court has regularly assigned moral blame in 'instances where the plaintiffs are particularly powerless or unsophisticated compared to the defendants or where the defendants exercised greater control over the risks at issue.'" *Doe*, 2025 WL 80365, at *6 (citation omitted). Plaintiff alleges she was a vulnerable minor unable to protect or defend herself for months in horrific circumstances. To the extent Defendant's staff enabled and facilitated her ongoing abuse and could have taken steps to prevent it, moral blame is fairly assigned to Defendant. "At minimum, the prevention of future harm counsels in favor of imposing a duty of reasonable care upon [Defendant], particularly if . . . .'such steps can avert violent episodes like the one that occurred here.'" *Id.*

In summary, the Court concludes that Defendant owed Plaintiff a general duty of due care and that the *Rowland* factors do not support limiting or excepting this duty.

**2. Breach, Causation & Damages**

The remaining elements of a negligence claim are sufficiently pled. By "knowingly facilitating and/or negligently facilitating the Trafficker's activities" through "acting as lookouts and informants" among other actions, Defendant breached its duty of care to Plaintiff, which resulted in Plaintiff's harm. (*See, e.g.*, FAC ¶¶ 72–77.) Plaintiff contends that Defendant's failure "to timely and properly prevent the sex trafficking or timely intervene" was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries. (FAC ¶ 73.)

The Court concludes Plaintiff has stated a claim for negligence and denies the Motion to Dismiss as to this claim.

**B. Gross Negligence & Recklessness**

"Gross negligence is the exercise of so slight a degree of care as to raise a presumption of unconscious indifference to the consequences." *People v. Nicolas*, 8 Cal. App. 5th 1165, 1171 (2017). "The state of mind of a person who acts with conscious indifference to the consequences is simply, 'I don't care what happens.'" *Id.* "The test is objective: whether a reasonable person in the defendant's position would have been aware of the risk involved." *Id.* For the reasons stated earlier, Plaintiff has plausibly alleged affirmative, intentional steps taken by Defendant's staff to protect Plaintiff's Trafficker, which furthered her abuse. A reasonable person in Defendant's shoes would have been aware of the risk of harm to Plaintiff that would occur from protecting the Trafficker from the police.

Similarly, Plaintiff also plausibly alleges reckless conduct. Under California law, "willful or wanton misconduct is separate and distinct from negligence. . . .Unlike negligence, which implies a failure to use ordinary care, and even gross negligence, which connotes such a lack of care as may be presumed to indicate a passive and indifferent attitude toward results, willful misconduct . . . involves a more positive intent to actually harm another or to do an act with a positive, active, and absolute disregard of its consequences." *Dazo v. Globe Airport Sec. Servs.*, 295 F.3d 934, 941 (9th Cir. 2002). Plaintiff's allegations that Defendant's staff intentionally alerted the Trafficker about police presence could support a finding that they acted in active disregard of the consequences to Plaintiff.

The Court denies the Motion to Dismiss as to these claims.

**C. Intentional Infliction of Emotional Distress ("IIED")**

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the

plaintiffs' suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009) (internal quotation marks omitted). "A defendant's conduct is 'outrageous' when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. . . .And the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result." *Id.* at 1051.

Plaintiff's allegations could potentially support a claim for IIED, given that she alleges that Defendant did not protect her – but instead affirmatively protected her Trafficker by alerting him to police presence – despite their knowledge and awareness that she was being sexually trafficked. Awareness of criminal sexual trafficking of a minor and yet taking steps to protect the abuser certainly qualifies as extreme and outrageous conduct. *See, e.g.*, *Drury v. Volusia County*, 2011 WL 1625042, at *10-11 (M.D. Fl. Apr. 28, 2011) (finding IIED claim plausible where Defendant was "aware of the illegal sexual abuse of Plaintiff and, rather than reporting these crimes to the authorities, . . . assist[ed] . . . in hiding their crimes and . . . obstruct[ed] the ongoing police investigation").

The Court denies the Motion to Dismiss as to this claim.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 24) is DENIED. Defendant shall file an Answer within fourteen (14) days of the date of this Order.

IT IS SO ORDERED.

Dated: **July 28, 2026**

Daniel J. Calabretta

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE